Norman v. NYU Langone Health System Okay, Mr. Bergstein, whenever you're ready to go. Good morning. May it please the Court, Stephen Bergstein for the Plaintiff Appellant. The District Court granted summary judgment for two primary reasons, and I want to discuss them both. First, the District Court said the plaintiff does not have a protected disability under the Americans with Disabilities Act, and the District Court said there is no evidence of retaliatory motive, and I'll address these in turn. First, the jury can find that the plaintiff did have a protected disability. In 2001, the plaintiff had a flu shot. She had negative reactions, including shortness of breath, chest palpitations. These symptoms can limit and impair the major life activity of breathing, and that is enough to make out a disability claim. Mr. Bergstein, I'm a little puzzled by this. I'd certainly be very sympathetic to your argument here in equity, but if I have an allergy to a different drug, whatever drug, and if I take that drug, that will cause all kinds of serious problems for me. But this is not like peanuts that are everywhere in the atmosphere. This is a particularized drug that I can either take or not take. That does not impair my breathing. I can breathe fine. I just – what it prevents me from doing is taking a flu vaccine. So why do you say that being allergic to something where the symptom of the allergy, if I'm exposed, is interference with breathing, that the condition that I have as I walk around the world is a disability because I can't breathe? It affects – my allergy affects my ability to breathe as a daily activity. Well, but it does. It affects her chest palpitations. If she takes the vaccine. So I guess there's this question. So if you have a condition that – where there's a trigger, right, and you're not actually limited in your life activities until the trigger occurs, do we think of that as a condition that limits the major life activities? I understand the question. She wouldn't normally have a breathing issue until she got the vaccine. But when she has the vaccine, it triggers something in her body that gives her a terrible reaction and that affects her breathing. And it affects her respiratory system. So that's a substantial limitation on her major life activity if she takes the vaccine. So if it's an allergy to something that you just wouldn't encounter in regular life, it's hard to say that that really inhibits your major life activities. But I guess, as Judge Lynch pointed out, you might be allergic to something that's omnipresent and maybe it really is something that you always have to be thinking about. Is that how we should think about it? We should think about it in terms of whether it's a trigger that you'll encounter often? Yes, whether it's a trigger that you'll encounter because people do get flu shots. So then your argument is because the flu shot is something that's regularly administered and is often a condition of employment that we should think about this as inhibiting major life activity, whereas if it was some obscure drug that nobody ever really needs to take, then it might not be? Is that how we should think about it? If we want to parse it that thin, we could. But remember, the ADA, amended ADA, tells us that we shouldn't get too caught up in this kind of extensive analysis on whether somebody has this. Well, we have to get caught up in whether it meets the statutory language. An alternative way of looking at it is that taking ordinary medicines that most people take and that many people are required to take as part of their job is a major life activity, and if you can't take that ordinary medicine and that forecloses you from various employment, then the ability to get a flu shot is a major life activity, and if you can't get it, that's a disability. I'm just having trouble with the conceptualization of this. This affects breathing. It only affects breathing on a continuous... It affects the respiratory system such that it's... Your argument is not that it needs to be omnipresent. Your argument is, for example, if you had a chemical in a particular workplace because of the nature of that business and you had an employee who had a severe allergy to that chemical, even though it's not omnipresent because of that workplace and the requirements of that workplace and the presence of that chemical, it would still be something that you would be protected under the ADA if you needed an accommodation. I would agree with that, and here, working at a hospital, there are certain precautions... Here your argument is that the flu shot is a requirement. Being exposed to the vaccine is a requirement of the hospital because of the nature of the hospital. Correct. Therefore, it would qualify. Correct. Isn't that what you're arguing? Correct. So that means that the substantial life activity that she's being inhibited from engaging in is employment at the hospital, right? That's another way of looking at it, but it still affects her respiratory system and her body's reaction to the vaccine is serious enough that it affects... that it's a disability under the standard. Can I ask, so is she... So do we know that she's allergic to the vaccine or she's allergic to eggs? Apparently she's allergic to the vaccine because when they... So my question to you is why isn't it a reasonable accommodation for an employer in that situation to say, we're going to give you the skin test for the flu vaccine to see if there's any other problems because that doesn't have eggs in it to see what your reaction to that test would be. Why is that? If it comes up that she has a reaction to the test, they're not going to give her the vaccine. She had no reaction to the test. So how can a rational jury conclude that that was not a reasonable accommodation given that her own doctor specifically said she had the egg vaccine? Because... I mean the egg allergy. She's allergic to the other vaccine too and she... But we don't... But the employer doesn't know that at the time that it's making this decision. It's like the employer knows she's allergic not to anything that's a flu vaccine. She's allergic to the drug that she took. They then proceed with caution. They don't say, oh, we'll just stick you with a random other drug and hope you're not allergic. We'll do what the appropriate medically indicated testing is to see whether you're allergic to something else. It's like I'm allergic to penicillin. If I say, well, because I'm allergic to penicillin, I'd rather not take any drug that's anything... bears any resemblance to penicillin. And an employer says, but wait a minute. The best medical evidence is this other antibiotic or whatever is not like penicillin and you're required to take that for whatever reason for this workplace. Do I get to just say, well, but sorry because I think that the new... that I'm going to turn out to be allergic to that drug too when my doctor hasn't said that, when the test doesn't say that. Now, it may turn out that that... I mean, she had a very unfortunate reaction. At least we have to assume that for the sake of our purposes. And that's very bad that that happened. But I don't see how that would be predictable from the fact that she had a demonstrated allergy, medically supported by her doctor, to whether it's eggs specifically, but it's to the drug that she had taken in the past. And they're proposing that she should take a different drug. Why is that not... Again, we get it. You're allergic to that flu vaccine. But you know what? We've got a different flu vaccine and there's no evidence that you're allergic to it. It turns out maybe she was. But there was... Why would we think that going in? I have to go back to the record. But I thought the doctor said she's allergic to the shot as opposed to... She's allergic to the shot that she had. So I'm looking at the Joint Appendix, page 613. It's the exemption form that was completed by her doctor, who was Dr. Agarwal. I guess the employer provided this. It says, if you agree the patient has a valid medical contraindication to vaccination, please indicate. And there's a checkbox that says patient is allergic to eggs, and that's checked. There's an option, patient has allergies other than eggs, but that's not checked. And then it says patient had a reaction to previous flu vaccine, and that's checked. So why would an employer, faced with this form, say, oh, she had a reaction to the previous flu vaccine because she's allergic to eggs and other flu vaccines are made using eggs. And so, therefore, we're going to provide the following accommodation, which is we're going to make sure she's not allergic to the other ingredients in the non-egg version of the flu vaccine. And if she's not, then we'll administer that one. I'm looking at page 613, where he checks off Planoff had a reaction to a previous flu vaccine, in addition to Planoff is allergic to eggs. So the jury can find that when they're giving her the second vaccine, after she said, I can wear a mask, a mask is going to work, and I've worn a mask in the past, and there was no problem, you're taking a huge risk when you give me the second vaccine. Okay, so to accept that argument, what we would have to say is that the accommodation, after she tells the employer that she's allergic to eggs or gets her physician to tell the employer that she's allergic to eggs, the accommodation of having her take a flu vaccine that's not made with eggs is not a reasonable accommodation. They should not even require her to take any flu vaccine. But I guess I have the following question. If her doctor tells the employer she's allergic to eggs and the employer says, well, okay, we will not require you to take the egg-based vaccine, we'll require you to take the non-egg-based vaccine. Why is that not a reasonable accommodation? Because the medical form says in addition to her being allergic to eggs, she had a reaction to a previous flu vaccine. But she had a reaction to a previous flu vaccine in 2001. Is there anything in the record that suggests that flu block was even available in 2001? No. So then doesn't there need to be an allegation that there's a reasonable person might think that based on what happened to her when she took the vaccine that was widely given in 2001, that she would logically be also allergic to a drug that was specifically developed to be available to people who had had previous allergic reactions to the previously available flu vaccines. But it's still a flu vaccine. So what? If I'm allergic to penicillin and the doctor tells me, oh, this antibiotic is completely different from penicillin, there's no record of anybody with a penicillin allergy having a reaction to this. Why does the fact that I'm allergic to penicillin generalize to I should really be considered as someone with an allergy to all antibiotics? I think this question really addresses whether it's a reasonable accommodation as opposed to whether she has an allergy. And if they know that masks are going to work because she did it in the past, why are they taking the risk? But you're not entitled to the accommodation that you would like. The question is, is the accommodation that they are offering reasonable? And certainly there's a reason why they would prefer to have her vaccinated rather than wearing a mask. In the abstract, that's reasonable. It's not like everybody gets to say, I don't want to take the vaccine. I can take a mask instead. It's only people who have an allergy that is relevant. It has to be an effective accommodation, or an ineffective modification is not a reasonable accommodation. When they take the risk in giving her another flu vaccine. But they gave her a test first. You're overlooking the fact. They didn't just say, well, you have this egg allergy. This new vaccine doesn't have eggs. We'll give you the new one. They also gave her a test that would, I don't know, there was no evidence that they couldn't rely on that test. I know she passed that test, but they took an interim step of giving her a skin test for that new vaccine, right? But that was a huge risk because she kept telling them, I'm allergic to the flu vaccine, and there's another way to do it. There's another way to protect me. Why is her opinion on that? It's like saying, it's like I walk into the employer and say, I'm blind. And they give me an eye test. And I can see everything. I say, yeah, but I consider myself blind. You know, it has to be some evidence that you actually have the particular disability that's being accommodated. So is your argument that even though the doctor checked off the box that says patient is allergic to eggs, the employer should have taken her word for it that she was actually allergic to all flu vaccines? Well, because he also checked off – had a reaction to a previous flu vaccine. Yeah, but I understand. But if all the previous flu vaccine was made using eggs, wouldn't the natural inference from this form that says patient is allergic to eggs and had a reaction to a previous flu vaccine mean – imply that she probably had the reaction because of an allergy to eggs? Wouldn't they be taking a huge risk in giving her the second vaccine when she told them this is what's going to happen and then it happens and there's a better way to take care of it? It's not an effective – But it's not a better way to take care of it, right? I mean a vaccine is more effective than a mask. That's why other employees without allergies are required to get a shot. Not everybody wears a mask as the general rule. What we're talking about is – I guess what I'm asking about is is there anything, any evidence anywhere here that there is a medically sound reason to think that someone who is allergic to eggs, according to her doctor, and had a bad reaction because the employer knows, right, that – what these reactions were. They were in 2001 and in her childhood. Is there any evidence in the record that a reasonable employer should expect that someone with that condition would turn out to be allergic to the new drug even if she passes the standard medical test, skin test, for whether an allergy is to be expected? The only answer I can give is, again, the doctor said it was a severe allergic reaction to the first flu shot. They're taking a huge risk in giving her the second one. Why? What is the evidence that this is a huge risk if she passes the skin test? Because she had terrible reactions to – To a different drug. Just because it's a drug that works against flu, if it's a different drug than the one they're asking her to take, that's what I'm asking. Is there some – if you had so much as a single bit of evidence that – If you could give her the non-egg vaccine or you could just let her wear a mask, the mask is less of a risk because there's some possibility there was another reason for the reaction, and so that is the more reasonable combination. That's what you're saying. That's the recklessness. Okay. All right. Thank you, Mr. Berks. Thank you. Ms. Barry. Good morning, Your Honors. May it please the Court. My name is Catherine Barry, attorney for Appellee and Cross-Appellant at NYU Langone Hospitals. The district court properly granted sobering judgment on Ms. Norman's failure to accommodate and retaliation claims under the ADA, and we ask that this aspect of the decision be affirmed. With regard to the failure to accommodate claim, Ms. Norman had to show that she had a disability at the time she requested an accommodation. She had to show that she had an allergy to the flu shot that substantially limited her ability to breathe at the time of November 10, 2017, which is when she requested an exemption from NYU School of Health. So you're saying she doesn't even have a disability? I'm sorry, Your Honor. So you're saying that she's not even disabled in the meaning of the ADA? Correct, Your Honor. So does that mean that your client could have required her to take the egg-based flu vaccine? We believe that they could have, Your Honor. They did not because they wanted to go above and beyond to make sure that the vaccine… So even in the face of the letter from the doctor saying that she's allergic to eggs and had a previous reaction to the flu vaccine, if they require her as a condition of employment to take the specific flu vaccine to which she had a previous reaction, and that is made with eggs, the ADA would have nothing to say about that. So, Your Honor, we do not believe that the evidence supports Dr. Aggarwal's position that her previous reaction to the egg-based version of the flu vaccine was severe or an anaphylactic allergic reaction. Ms. Norman testified that the 2001 reaction lasted between 10 and 20 minutes. Isn't that a jury question? 10 and 20 minutes of not being able to breathe sounds very serious to me. Now, you argue – it's fine, you can argue this to a jury if it gets to that – that, well, it wasn't really like 10 minutes of desperate choking. It was enough to make her pull over to the road, wait it out, and then drive on. That's not so serious. But I don't know why that isn't a question that's going to turn on exactly what her testimony is and exactly how well – how the jury evaluates that testimony. Your Honor, I agree that 10 minutes of not being able to breathe would be a substantial limitation, but Ms. Norman actually did continue driving throughout the entire reaction. She did not stop. How about she pulled over to the side and waited it out? She claimed that she started to pull over towards a gas station but never stopped driving. The district court noted that she paused, but it did not note that she was pausing at a red light. I don't understand. You say in your brief that you – in terms of someone who has a disability that qualifies, you can't consider any evidence that was discovered after the date of the employer decision. But isn't that mixing reasonable accommodation with whether or not someone is disabled or not? I'm troubled by that from a legal standpoint. In other words, let's say you have a doctor who says because of – let's say it was a mild reaction initially to some substance. The doctor says, look, she's allergic to this. If she's exposed to this, it could be – breathing could be life-threatening, right? But it hasn't happened. It was only a mild response. But the doctor believes based upon that and the substance that it could be worse than that. If the employer ignores the doctor's suggestion, a day later she's exposed in the workplace to that substance and has a severe reaction, hospitalization, death. You're saying the court can't consider that in determining whether or not she was in fact disabled at the time of the decision just because it occurred a day after. Is that your position? Your Honor, if there was evidence that the allergy actually existed at the time or the condition that it existed at the time, I believe that they could. But there's no such evidence here. At the time of the accommodation request – The doctor wrote in a form that it existed, right? The doctor wrote in the form. We just went through this form multiple times. He checked the box saying she has an allergy to the flu vaccine. How can you say there was no indication she had this allergy? Yes, Your Honor. There was not an indication of how severe it was maybe based upon the 2001 incident. But that's what I'm suggesting to you. If we were to establish as a matter of law that you can't look at anything that happens afterwards to see whether or not it was substantially impairing life activity, I think that would be problematic. Your Honor, Ms. Norman confirmed, though, during discovery that the information on the form was simply her doctor transcribing her own self-diagnosis. He did not conduct any testing. He did not treat her for the 2001 reaction. This goes back to Judge Lynch's point, though. You're saying we can't credit what the doctor – the doctor's conclusion wasn't supported. But we'd have to say then a jury couldn't credit his conclusion, right? Well, I'm saying that it is her burden, and we don't believe that it's one that she's met. But regardless, even assuming she did have an allergy to the flu shot, even assuming that the 10 to 20 minutes of shortness of breath and heart palpitations was substantially limiting, the record evidence shows that she was reasonably accommodated based on the information available to NYU at the time. Right, and that's a different argument. I'm not sure why we've spent – you've spent so much of your time defending, claiming that your client could do something that it never did, which is to take somebody whose doctor says that they have a serious allergy to a particular drug, and you could fire them if they refuse to take that drug. That seems like going way out on a limb when what you're really – what your client actually did was not that. It was to provide a reasonable accommodation. That's the argument you're making now, right? It is, Your Honor, and it is an argument we made at summary judgment. We do agree with Judge Torres' decision that Ms. Norman was not disabled at the time of her exemption request and that the reaction that she had was not a substantial limitation on her ability to breathe. Right, but we can affirm on any basis that's in the record that you raised. Sorry, the reaction that she had in the past was not a substantial limitation or the one that she had after getting this vaccine? The substantial reaction that she had in 2001 was not. What about the one she had after this vaccine was administered? We don't believe that's relevant to the failure to accommodate claim because we did not know that that was going to happen. Okay, but like let's just say that that's the reaction that happened in the past and you had knowledge of it. Would you have considered her disabled at that time? We are not disputing that having to go to the emergency department or having to receive medication could be sufficient to establish a substantial limitation on the ability to breathe. But that's not what happened in 2001. But ultimately, yes, Your Honor, to your point, even if she was disabled and even assuming that she was disabled, she was also accommodated. And there's really no dispute to the reasonableness of that accommodation. NYU tailored its acts towards Ms. Norman specifically on its understanding of her medical condition at the time of its consideration. And that was that her doctor represented she was allergic to eggs and had had a negative reaction to the flu vaccine in 2001, a time before flu block, when every flu vaccine had eggs in it. It was reasonable to refer her to an allergist for further evaluation and the flu block skin test. It did both of those things and it only required that she get the flu block vaccine after she went to the allergist. The allergist gave her that skin test. The skin test was negative and the allergist concluded that it was safe for her to receive the vaccine. So what about the argument that, well, she said that she could just wear a mask and that's as protective and good enough and that would have been the reasonable accommodation? Your Honor, she's not entitled to the accommodation she prefers. She's entitled to a reasonable accommodation. And when NYU expanded its flu vaccine policy in 2016 to remove the personal exemption and to extend to all employees, it did so because its chief epidemiologist believed that vaccination was the single best way to prevent flu transmission among hospital employees and staff. And it was entitled to tailor an accommodation that took those goals into account. And that's exactly what it did. I understand Mr. Bergstein's point that he believes it was an ineffective modification, but I don't believe that's a persuasive argument because at the time we offered that accommodation and at the time the accommodation was given, there was no reason to believe it would not be effective. And after it was, we exempted her from the flu requirement. It's not as if NYU then turned around and said she had to receive the flu block vaccine in perpetuity. The way you argue that it would have been perfectly entitled to do. We believe that it would have under the law, Your Honor, but it regardless is not what happened here. You know, and I do want to note on the retaliation claim. We believe the district court erred in holding that Ms. Norman was subject to an adverse act. The only alleged acts are a threat of termination and a paid suspension. And what Ms. Norman has characterized as a threat of termination is really a notification. Ms. Norman initially refused to take the flu block skin test because she refused to take the flu block skin test. She was denied an exemption because she was denied an exemption. She was notified that if she did not get vaccinated, she would be terminated in accordance with the immunity requirements policy. Informing an employee that they are going to be subject to a hospital wide policy that applies to all employees, regardless of whether or not they were disabled or had requested an accommodation is not an adverse act. But for purposes of retaliation, it's whether the action would reasonably dissuade someone from making a complaint or request in this case. Haven't we said over and over again things like threats of termination could satisfy that again for purposes of summary judgment? Aren't you asking us to reject something that we've repeatedly said? Threats of termination with more, Your Honor, and I don't believe informing an employee that they are going to be subject to a policy that existed long before they requested an accommodation. Isn't there a difference between a threat of termination? If the boss says after getting a complaint, if you keep complaining about race discrimination, we're going to fire you. It seems to me that's rather different than what you're talking about here. And this is, I guess, your point about it's only a notification.  That's the policy that is being applied from the beginning is either you get the shot or you demonstrate a reason for an exemption from it. And if that doesn't work out, then you're going to be if you don't do any of those things to our satisfaction, you're going to be fired. That existed from before. That's not something that comes into play because she asked for an accommodation. That's something that was in play from the beginning, right? Exactly, Your Honor. No employee could look at an employer saying we have this policy that existed before your accommodation request. This policy still exists exactly as written. That's a different argument than what you were making a moment ago. A threat of termination could be an adverse action for retaliation. What you're really arguing in response to what Judge Lynch said is that if the accommodation is reasonable and if you then because you don't get the vaccine, you're terminated that by definition that can't make then make a retaliation claim. That's a different argument, I think. Right? Your Honor, what I'm arguing is that informing an employee that they're going to be subject to a policy that they were subject to before the accommodation request and are continuing to be subject to in the exact same way after an accommodation request is not a real threat of termination and is not an adverse act. So your argument is just everything stands or falls with whether the accommodation was reasonable because if it was reasonable, all you did was tell her she had to comply with the reasonable accommodation. There was not a separate threat of retaliation to ask her to do something other than comply with the pre-existing policy. Well, I do believe there is a distinction in that. Yes, whether the accommodation was reasonable applies here, but she really what is coming in, we were just informing her of the natural consequences of a policy that she was going to be subject to regardless of whether or not she got it. Well, there did seem to be a little bit of confusion about whether it was the natural consequences, right? Because she asked whether it was voluntary and the doctor said it was like taking the syntest and taking the other vaccine and they said it was voluntary. And so she decided not to do it and then somebody told her that she's going to be fired if she doesn't do it, right? I mean, it wasn't obvious to her. Well, and Your Honor, that brings us actually correctly to the paid suspension. Yes, there did seem to be some confusion, which is why NYU offered her additional time to meet with the allergist again and to receive the flu block skin test. That it had given her additional time, which it was not required to do under the policy in order for her to have that second opportunity to meet with Dr. Abdel-Dayem should also not be considered retaliatory. And if I could just make one final note on the cross appeal if Your Honors don't have further questions on this issue. I know I'm over my time. Yeah, I think we have your papers on that. Thank you. Thank you, Your Honors. All right, Mr. Berkstein, you have three minutes in rebuttal. The retaliation claim, she made a good faith reasonable accommodation request. That's all that's required to make out a retaliation claim. And within two months, she's threatened with termination and given a suspension with pay. And that is enough to make out a primary case on the McDonnell-Douglas. But isn't that just a denial of her accommodation request? Right. So they said, well, we're accommodating you by letting you take the flu vaccine, the non-egg vaccine. And then she says, well, I don't want to take any vaccine. I'd rather wear a mask. And they say, no, we're sticking to our policy. Well, if it's a good faith request to to wear a mask and not take the vaccine, then even if this court finds that she didn't have a disability, I don't think this court would say that it wasn't a good faith request. That can be a good faith request, and the response might not be retaliation. Like it can't be that an employer is always required to grant every good faith request. Right. So if the employer is saying, well, we're not going to give you that accommodation, you have to comply with the original policy. That's retaliation. Well, the emails go beyond that. She's talking about possible termination. They're referring her to human resources. Termination is what the whole deal is, is that you're supposed to take the if I just was working for NYU and I just I don't want to take the vaccine. No medical, no religious, no nothing. I just like Bartleby the Scrivener. I would rather not. I get fired. Right. That's what happens. Unless it not unless you made a good faith assertion that you can't take. But if I make a good faith assertion, then the question becomes, did they give me a reasonable accommodation? And if at the end of the day they deny the accommodation that I requested or they make some offer that the court concludes is a reasonable accommodation, then how is it retaliation? I mean, in other words, is the pretext issue. They're saying they didn't do this in order to retaliate. They did it because they she rejected their reasonable accommodation. If it's not a reasonable accommodation, you win on that. But I'm not sure I understand why the don't we have lots of case law saying mere proximity is not enough to overcome lawyers argument that this is the reason why we did this. It seems to me rather clear that if if they're right on the reasonable accommodation, then they fire suspend whatever because they're applying their policy. They're not doing anything that they would have wouldn't have done to somebody who never asked for an accommodation, but simply refused to comply with the policy. The retaliation claim, to some extent, is intertwined with the reasonable accommodation. Yeah, I think so. But if they're but the adverse action is not that they gave her the vaccine in February 2018. The adverse action is, as Judge Torres suggested in ruling in our favor on that point, threat of termination plus suspension with pay can deter somebody from making the request. But if we concluded that the accommodation was reasonable as a matter of law, the retaliation claim in this particular case would have to fail. Right. I don't know if that's true because. If an employer says to you for you to stay employed here, these are the things that job requires you to X, Y and Z. You make a reason you make an accommodation request and they respond in a reasonable manner. You're saying that they can't fire you for because you can now not do X, Y and Z. If the request is made in good faith and they. But we would be determining if we found it to be a reasonable accommodation. Not only would be we determine was in good faith that you're talking about the request by your client or. Yes, the request by the plaintiff. If she requests to wear a mask instead of taking the vaccine. No, but if. No, you would have to have evidence that other people refused to comply and they didn't fire the person or take some other action against them. Then you could potentially have a separate claim that, you know, there are people who didn't request it. An accommodation was not with some lesser sanction was taken against them. But you don't have any evidence of that. You don't have anybody who is in your client's situation who did not take the vaccine, who they allowed to just stay on. Right. I think that's correct. OK, I guess another way of asking the question is, do you agree that a retaliation has to be something other than applying the preexisting policy? I didn't hear the rest. Does retaliation have to be have to include something other than applying the preexisting policy? Don't they have to do something beyond just applying the policy that they already had? They have to do something to intimidate her into not even making a request. If all they do is deny the request, it's not retaliation. This court said in Brown v. Syracuse that they applied policy in an unreasonable way. Right. OK, so is there something. So what is it about the way they responded to the request here that makes it go beyond a denial of the request and an application of the preexisting policy to be something extra, something that actually just intimidates somebody into even making a request? Because there seemed to be an early push to terminate her as soon as she put in the request and said she didn't want to take the flu vaccine. Referring her to HR, possible termination, plus the suspension, that goes beyond simply applying the termination policy in a fair and neutral way. It's almost as if they were irritated or – So that makes it extraordinary? So what would they do – so if they weren't retaliating, they were just denying the request, what would it have looked like? If they weren't retaliating – I don't think they'd be threatening her with termination the way they did in this case. OK. It seemed to be just an early push to get her out of there because she's not – because they're impatient with her objection to the flu vaccine. All right. I think the time is up. Thank you. Thank you. Reserved decision.